LEE, C.J.,
dissenting:
¶47. With respect for the majority, I nevertheless am compelled to dissent. The trial judge granted the defendants’ motion to exclude the testimony of the plaintiffs expert, Dr. James Gebel, then granted summary judgment on the ground that the plaintiff lacked any evidence of causation.
¶ 48. On September 7, 2009, Carol King was helping her elderly parents tidy up their home when she suddenly fell back on a sofa; said, “I think I am having a stroke”; and lost consciousness. When King collapsed, her father called an ambulance, which transported her to Ocean Springs Hospital, a satellite of Singing River Hospital. At the direction of the ambulance attendant, King’s husband carried her prescription medications to the emergency room.
¶ 49. At the emergency room, King was misdiagnosed as a drug addict suffering from an overdose. King was in effect rendered no treatment and left to “sleep it off.” The next morning, King was examined by a neurologist and correctly diagnosed as a stroke victim, much too late to administer any form of treatment to temper or lessen the effects of the stroke. It had done its damage.
¶ 50. King was correctly diagnosed by the neurologist as having suffered a bad hemorrhagic stroke, a basilar artery occlusion, which left her totally incapacitated and unable to walk, talk, eat, or control her bodily functions. King died January 23, 2013.
¶ 51. On its website, Ocean Springs Hospital advertises as follows:
It is important to get to the hospital as soon as possible if you suspect a stroke. Many large hospitals are now treating strokes caused by blood clots with clot dissolving medicines. These medicines can cause the symptoms to stop very quickly. They can prevent long-term disability or death. This treatment works only if the medicines are given within the first 3 to 6 hours after the stroke began.
¶ 52. Despite advertising itself as the place to go for stroke victims, Ocean Springs Hospital failed to properly recognize King as having suffered a stroke, instead labeling her a drug addict and leaving her to “sleep it off.” Through its neglect, delay, and misdiagnosis, Ocean Springs Hospital hindered King from receiving the treatment that may have substantially improved her condition.
¶53. In an effort to fully and competently analyze and diagnose King’s condition and the treatment she received, King’s attorney sought the most qualified expert on strokes available, who in all respects was familiar with and practiced medicine *330 similar to the same standards and treatment offered by Ocean Springs Hospital. That expert was Dr. Gebel, a board-certified neurologist from Akron, Ohio, who has extensive experience treating stroke victims like King.
¶ 54. The trial court denied Dr. Gebel the right to testify, citing Ladner v. Campbell, 515 So.2d 882, 889 (Miss.1987), for the proposition that there must be proof of “a greater than fifty (50) percent chance of a better result than was in fact obtained.” However, Dr. Gebel stated in his affidavit: “It is my opinion that Mrs. King would have achieved recanalization[11] with intravenous tPA to a high degree of medical probability, certainly more than a 51% chance.” This is the exact same treatment Ocean Springs Hospital advocates on its website for being the place to go for stroke victims.
¶ 55. Under Mississippi law, an expert witness in a medical-malpractice case must be familiar with and have knowledge of the treatment and standard of care afforded the patient, and also must possess similar education, training, and skills. Dr. Gebel met all of these requirements. If he had not discussed recanalization with intravenous tPA, then he would have been disqualified from testifying because he did not use the same standard of care as did Ocean Springs Hospital. Whether this approach to treatment meets the necessary “greater than fifty percent” requirement as enunciated in Ladner should not be a preclusion to Dr. Gebel testifying. The standard should be what Ocean Springs Hospital would have normally done in its treatment of stroke victims.
¶ 56. Dr. Gebel is imminently qualified through education, training, and experience to testify. There is a need for judges to serve as gatekeepers under Daubert[12] and to exclude testimony that is unrelated. It is also within the jury’s province to give what weight it deems proper to expert testimony.[13] There is also a greater need for justice. If Dr. Gebel is not qualified to testify, then pray tell, who is?
¶ 57. In this case, an imminently qualified expert was denied the right to testify. I respectfully dissent and would reverse the grant of summary judgment.
IRVING, P.J., AND JAMES, J., JOIN THIS OPINION.

. Recanalization is the removal of the obstructing blood clot that causes a stroke.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1166 (Miss.1992).